IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PIERRE PICHETTE,

    Plaintiff,

vs.                                              CASE NO. 1:03CV177-MMP/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income (SSI) under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.     **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on June 23, 1999, alleging a disability onset date of January 1, 1999, because of heart disease, chest pain, cardiac bypass surgery, depression, deafness in his right ear, loss of memory, lack of concentration, and an inability to read or spell well.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on July 12, 2002, and entered an unfavorable decision on November 18, 2002.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff suffers from several severe disorders, within the meaning of the Act, such as Coronary Artery Disease, Chronic Obstructive Pulmonary Disease, Cognitive Disorder, Dysthymic Disorder, and Anxiety Disorder, but none of these impairments meet the listings.  The ALJ further found that Plaintiff's reports of limitation due to his impairments are not entirely credible because he has not sought medical treatment since his heart attack in 1996, takes only over the counter medication, smokes 30 to 40 cigarettes a day, follows no special diet or medical regimen, and reports normal daily activities.  None of his examiners have found any limitations which would preclude a reduced range of light work, and the vocational expert called to testify at the hearing identified a number of jobs which Plaintiff could perform, and which exist in substantial numbers in the national economy.

**No. 1:02CV125-SPM/AK**

**C.     ISSUES PRESENTED**

Plaintiff argues that the mental status report of Dr. Abeles is not signed by her and is therefore not evidence from an acceptable medical source; and the Mental Residual Functional Capacity Assessment of Dr. Rothman should have constituted new evidence and warranted a remand by the Appeals Council.

The government responds that although the regulations require that consultative examination reports be signed by the medical source who performed the examination, the reports of Dr. Rothman and Dr. Cogner are signed and both reports support the findings of the ALJ. Dr. Rothman's later report dated July 17, 2002, was submitted after the July 10, 2002, hearing, and the Appeals Council correctly concluded that it was not material. Dr. Rothman examined Plaintiff on August 31, 2000, and submitted a report finding that his mental functioning was not consistent with disability. The later report describes significantly more serious limitations without an explanation of why Dr. Rothman's opinion changed even though he did not re-examine Plaintiff after the August 31, 2000, examination. There is also no explanation as to why this report made shortly after the hearing was not submitted to the ALJ prior to his decision.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:02CV125-SPM/AK**

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:02CV125-SPM/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him

**No. 1:02CV125-SPM/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

The medical records of Plaintiff's heart attack show that he was admitted on October 30, 1996, with a sudden onset of chest pains for which he underwent a coronary artery bypass. (R. 149). He was discharged on November 11, 1996, with instructions to return for follow-up care with his cardiologist. (R. 150). He met with Dr. Snyder on November 20, 1996, and was found to have an excellent x-ray, and was told to refrain from heavy lifting for two weeks, no driving for two weeks, and then to resume full activities. (R. 153).

There is no other medical evidence of treatment until he met with Dr. Robert Greenberg for a consultative examination on September 29, 1999, in association with his application for disability benefits. Dr. Greenberg performed a number of laboratory tests, including a chest x-ray, pulmonary function tests, exercise electrocardiogram, and

**No. 1:02CV125-SPM/AK**

he found that Plaintiff had shortness of breath secondary to cigarette smoking, mild restrictive ventilatory defect secondary to obesity, and chest pains, but he was of the opinion that Plaintiff could perform most work related activities except for strenuous exertion. (R. 156-201).

Dr. Greenberg performed another consultative examination on August 16, 2000, and added that Plaintiff probably had COPD from smoking, but was still able to perform work related activities, except strenuous exertion. (R. 227-228).

There are several mental status examinations in the record. One, dated November 10, 1999, performed by Dr. Linda Abeles, found him to be functioning in the low average range of intelligence, with somewhat decreased memory abilities, which she described as auditory memory loss. (R. 210-212). Despite the memory problems, Dr. Abeles found Plaintiff capable of obtaining and maintaining employment. (R. 212).

A Mental Residual Functional Capacity Assessment and report by Dr. Michael Zelenka found Plaintiff to have only moderate limitations in carrying out detailed instructions and maintaining concentration for extended periods of time. (R. 213-217). Plaintiff was found to have moderate limitations in his ability to complete a normal work day and work week without an unreasonable number of rest periods, but every other category was not significantly limited or no limitations were noted. (R. 212-217).

Another mental assessment by Dr. Wayne Cogner found him also to have some memory problems, but capable of routine, repetitive tasks. (R. 240-243).

**No. 1:02CV125-SPM/AK**

Dr. Rothman examined Plaintiff on August 31, 2000, and based on Plaintiff's self reported mental status (no objective tests were administered), she opined that he was in the low average range of intelligence and would be helped by reduced caffeine intake and cognitive psychotherapy. (R. 237-239). However, Dr. Rothman completed a Mental Residual Functional Capacity Assessment dated July 17, 2002, for Plaintiff's counsel and found that Plaintiff "has an extreme inability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number of rest periods." (R. 273-276). This assessment was not provided to the ALJ, but was submitted to the Appeals Council.

Two Physical Residual Functional Capacity Assessments are in the file. One assesses Plaintiff as able to lift up to 50 pounds, with 25 pounds frequently, and able to sit, stand and walk six hours out of an eight hour day. (R. 202-209). The second one is virtually the same, with the exception of the lifting assessment (20 pounds with 10 pounds frequently). (R. 229-236).

Several forms are in the record describing Plaintiff's symptoms and daily activities. These reports are conflicting in that Plaintiff describes severe limitations in his abilities, such as being unable to walk or carry things, but his girlfriend said that he fished every chance he could get, hung out with friends every day, worked around the house, was able to concentrate and focus on the task at hand, drove himself without problems, and played daily with his grandchildren. (R. 118-123). Plaintiff says that the stress and work of daily life causes his chest pain, which requires him to lay down for 10

**No. 1:02CV125-SPM/AK**

to 15 minutes, but he takes no medication and has no regular doctor. (R. 119). He describes other stress factors as worrying about paying his doctor's bills and not working, but he does not see any doctors and has not attempted to find a job or be re-trained for work since 1999. (R. 122). He also describes being depressed by people and that he tries to keep to himself, but again his girlfriend says he visits every day at a local store with other men. (R. 130-133).

### F.  SUMMARY OF THE ADMINISTRATIVE HEARING

The hearing was held on July 12, 2002, and an attorney, Ms. Collins, was present on Plaintiff's behalf. (R. 25). Plaintiff testified that he was 50 years old at the time of the hearing, and attended high school through the 12th grade, but did not graduate or obtain a GED because he had difficulty reading. (R. 26). His past relevant work was as a pest exterminator. (R. 28). He quit his job on January 1, 1999, because he was about to be fired and was having stress related chest pains on the job. (R. 31-33). He did not look for another job and did not seek medical attention. (R. 33). He did not seek unemployment or vocational rehabilitation. (R. 33). He did not apply for public health services and saw no doctors, except for an ear infection, since his alleged date of onset. (R. 35). He had a heart attack in 1996, and had double bypass surgery. (R. 35). Plaintiff drinks caffeine and smokes a pack and a half of cigarettes a day despite doctor's warnings. (R. 36). Plaintiff describes his day as getting up, drinking coffee, reading the newspaper, and then visiting a friend until around noon. (R. 38). He then takes a nap until his stepdaughter calls him to go pick the grandchildren up from school

at 3:00. (R. 38). He takes them home, makes sure they do their homework, and plays with them until his fiancee comes home. (R. 38). She fixes dinner around 7 p.m. (R. 38). He cleans around the house and cuts the grass on a riding lawn mower about every 2 weeks. (R. 39). He fishes twice a week, does some grocery shopping, and watches t.v. several hours at night. (R. 42). Plaintiff claims that he is forgetful and suffers from stress every day. (R. 44-45).

The vocational expert testified that Plaintiff would be unable to perform his past relevant work as a pest control operator given the ALJ's hypothetical of an individual able to stand, walk and sit for a period of six hours out of an eight hour day and unable to deal with obnoxious fumes. (R. 51). However, given this hypothetical the expert testified that there were numerous other jobs which Plaintiff could perform. (R. 52). The ALJ added to the hypothetical that Plaintiff was limited to low level semi-skilled work, and the expert named more jobs that would not be precluded by these limitations. (R. 52-57). The expert testified in response to the attorney's questions that no jobs would be available if being on time stressed Plaintiff too much or if Plaintiff fell asleep after being on the job after one hour.

**G.     DISCUSSION**

     a)     Unsigned report of Dr. Abeles

The Commissioner concedes that the regulations require that medical sources sign their reports, and Dr. Abeles' report was unsigned. See 20 C.F.R. § 404.1519n(e). The Commissioner does not concede that this failure operates to exclude consideration

**No. 1:02CV125-SPM/AK**

of the report, but adds that there is other evidence in the record that duplicates the findings of Dr. Abeles, including Dr. Rothman's report of August 31, 2000, and the non-examining physician, Dr. Cogner, who reviewed the record, who both found some cognitive deficits, but opined that Plaintiff could still perform simple, routine, repetitive tasks. The undersigned is of the opinion that the record, even without the report of Dr. Abeles, supports a finding that Plaintiff does not suffer from a mental disorder that would preclude all work. Dr. Rothman, initially, and Drs. Cogner and Zelenka were of the opinion that Plaintiff's mental limitation minimally affected his ability to work, and they believed he was fully capable of working routine, repetitive work. Dr. Zelenka noted that Plaintiff was fully capable of performing his past relevant work even after the heart surgery, and Plaintiff testified that he quit his job not because of any mental disorder, but from chest pains induced by stress he attributed to working with the public. Although he relates a continued level of stress and anxiety, his reports conflict with his live-in girlfriend's report that he socializes most of the day, tinkers with home repairs, and plays with his grandchildren. These activities do not comport with a mental disorder, which would preclude all work. All mental examiners agreed that he had a low average intelligence, but that he was fully capable of routine, simple tasks, which the expert understood and still could identify numerous jobs, which Plaintiff could perform with these limitations. There is no merit to this ground.

**No. 1:02CV125-SPM/AK**

      b)      <u>New and material evidence</u>

Plaintiff contends that the later report of Dr. Rothman, in particular the findings that Plaintiff was extremely limited in his ability to complete a normal work day and work week, should have been considered by the Appeals Council as new and material evidence, and this cause remanded to the ALJ for consideration of the report.

The Eleventh Circuit utilizes a three-step analysis for determining whether new and material evidence warrants remand: (1) whether the evidence is new and non-cumulative; (2) whether the evidence is material, that is relevant and probative, so that there is a reasonable probability that it would change the outcome; and (3) whether there is good cause for the failure to submit the evidence at the administrative level. <u>Keeton v. Department of Health and Human Services</u>, 21 F.3d 1064, 1068 (11th Cir. 1994). The Commissioner argues that the evidence fails on two counts, i.e. that it is not material and for lack of good cause. The Court agrees.

There is no explanation for why Dr. Rothman changed his assessment after his examination two years earlier. The letter from counsel accompanying the report does not indicate that Dr. Rothman re-examined Plaintiff. Further, even if Dr. Rothman's new assessment was in the record, there is still other evidence to support the ALJ's decision that Plaintiff does not suffer from a disabling mental condition such that the report would not likely change the administrative decision. Finally, there is also no explanation for why this report was not submitted to the ALJ, when it was written a few weeks after the

**No. 1:02CV125-SPM/AK**

hearing and months before a decision was rendered. There was ample time to submit this report to the ALJ, and Plaintiff has not explained why this was not done.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this  **7th** day of March, 2005.


s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:02CV125-SPM/AK**